IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | } } } |
| Plaintiff, | } CIVIL ACTION NO. } } 3:17-cv-01582 |
| v. | } } |
| ATLAS ENERGY GROUP, LLC | } } } } |
| Defendant. | } } |

**PLAINTIFF'S TRIAL BRIEF**
**ON THE ISSUE OF VICARIOUS CAT'S PAW LIABILITY**

The Age Discrimination in Employment Act of 1967 (ADEA) was enacted to promote the employment of older persons based on their ability rather than their age, and to prohibit arbitrary age discrimination in employment. 29 U.S.C. Section 621(b). Section 623(a)(1) provides that it is unlawful for a covered employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." The ADEA's "but-for" causation standard requires a plaintiff to prove that an adverse action would not have been taken "but for" the plaintiff's protected age status. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009). In this lawsuit, EEOC brings a cause of action on behalf of William A. Hutto ("Hutto") against Defendant Atlas Energy Group, LLC ("Atlas" or "Defendant") for violating the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) and (d). EEOC alleges that Atlas discriminated against Hutto by terminating him because of his age in violation of the Age Discrimination in Employment Act of 1967, as amended.

PLAINTIFF'S TRIAL BRIEF ON THE ISSUE OF CAT'S PAW LIABILITY                                                                 1

## **CAT'S PAW LIABILITY**

An employer may be held vicariously liable under the ADEA's but-for causation standard in cases where an official who possesses ultimate decision-making authority is influenced, even unwittingly, to take an adverse employment action by a non-decision-making employee who is motivated by discriminatory animus. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011). In *Staub*, the Supreme Court relied on principles of agency law to hold that an employer is liable under the "Cat's Paw" doctrine of vicarious liability when: (1) a supervisor, who is motivated by unlawful discriminatory animus, intends for an adverse employment action to result from their discriminatory act; and (2) the discriminatory act is a proximate cause of the adverse employment action.[1] *Id.* Under the Cat's Paw theory, the discriminating supervisor and ultimate decision-maker(s) act as agents of the employer, insofar as each of them comprises part of a chain of authority delegated by the employer, and each of them exercises that authority in the interest of their employer. *Id.*

In this case, the evidence presented by the EEOC is expected to show that on January 9, 2014, Barnett Production Foreman William Hutto was terminated from his position by his supervisor, Tyler Yelverton, the Atlas Barnett Production Superintendent. Based upon the testimony of Mr. Hutto and other former employees, EEOC is expected to assert that Yelverton was biased against Hutto because of his age (52).

In contrast, Atlas is expected to argue to the jury that Yelverton was not the ultimate decisionmaker in the termination of Mr. Hutto. Consistent with its discovery in this case, Defendant is expected to assert that the ultimate decisionmakers included higher level managers, including Atlas Manager of Human Resources, Beth (Weir) Loomer, VP of Human Resources

---

[1] This is also sometimes referred to as "subordinate bias liability."

PLAINTIFF'S TRIAL BRIEF ON THE ISSUE OF CAT'S PAW LIABILITY               2

Robin Harris, Senior VP of Operations David Leopold, and President Mark Schumacher. (*See* Loomer Depo, pp. 46, 52-54, 74, 101-02).

Given this expected presentation of conflicting facts, EEOC proffers the Cat's Paw doctrine as an alternative theory of liability in this case. The Commission is expected to argue at trial that even if higher level managers other than Yelverton are determined to be the ultimate decisionmakers on the termination of Mr. Hutto, the evidence shows that these higher level managers (Harris, Leopold and Schumacher) were influenced, even unwittingly, to terminate Hutto by Yelverton, who is motivated by discriminatory animus. The documents and testimony are expected to show in this case that Mr. Yelverton, motivated by discriminatory animus, negatively evaluated Mr. Hutto's performance and recommended his termination; and that recommendation became the proximate cause of Mr. Hutto's termination by the ultimate decision-makers.

While *Staub* involved a claim brought under another employment discrimination statute, the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) (38 U.S.C. §§ 4301–4335)—where a "motivating factor" standard of causation applies—courts also apply Cat's Paw doctrine in employment discrimination claims where a "but-for" standard of causation applies, including retaliation claims brought under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et seq.) (Title VII) and claims brought under the ADEA. *See Zamora v. City of Houston*, 798 F.3d 326, 332-33 (5th Cir. 2015) (in a Title VII retaliation claim, where but-for causation applies, Cat's Paw analysis was viable means of establishing a causal connection between protected activity and the adverse employment action); *see also Shelley v. Geren*, 666 F.3d 599, 609-10 (9th Cir. 2012) (using Cat's Paw analysis in the ADEA context). In those cases, courts modify the second prong of the Cat's Paw analysis to require that

the discriminatory act be the "but-for" cause of the adverse employment action. *See Simmons v. Sykes Enterprises*, 647 F.3d 943, 949-50 (10th Cir. 2011) (ADEA plaintiff must show the subordinate's animus was a "but-for" cause of the adverse employment action, i.e., it was the factor that made a difference."); *see also Sims v. MVM Inc.*, 704 F.3d 1327, 1336 (11th Cir. 2013) (ADEA plaintiff must prove the subordinate supervisor's "but-for" causation or "determinative influence" over the ultimate adverse action — not mere proximate causation). In this case, Atlas's claim that Mr. Yelverton lacked formal decision-making authority does not sever the but-for chain of causation. Motivated by discriminatory animus and relying on his own negative performance evaluations of Mr. Hutto, Mr. Yelverton persuaded the Atlas decision-makers to render the ultimate termination decision. Thus, Mr. Yelverton's discriminatory act was the but-for cause of Mr. Hutto's termination; but for Mr. Yelverton's recommendation to the ultimate decision-makers, Mr. Hutto would not have been terminated.

Prior to rendering an adverse employment action, an employer may be able to mitigate its liability under the Cat's Paw theory by conducting an independent workplace investigation, to rule out discriminatory animus as the but-for cause of the termination. *See Staub*, 562 U.S. at 421. However, such an investigation does not absolutely shield the employer from liability. *Id.* On the contrary, "if the independent investigation relies on facts provided by the biased supervisor—as is necessary in any case of cat's-paw liability—then the employer (either directly or through the ultimate decisionmaker) will have effectively delegated the factfinding portion of the investigation to the biased supervisor." *Id.* Ultimately, if a decisionmaker relies on biased supervisors' statements and does not conduct any other interviews or seek other first-hand information to support the termination decision, such an investigation is inadequate. *See Zamora*, 798 F.3d at 335.

In this case, it is questionable whether Atlas's factfinding efforts constituted an investigation at all, much less an independent one. As in *Zamora*, Defendant's higher level managers (Harris, Leopold and Schumacher) relied exclusively on the e-mailed statements of Mr. Yelverton to arrive at its decision to terminate Mr. Hutto. It is expected that HR Manager Loomer will testify consistent with her deposition that Yelverton's e-mails assessments of Hutto were "supported" by the higher level managers (*See* Loomer Depo, p. 52-53). However, Atlas did not give Mr. Hutto an opportunity to rebut the accusations with his account of events. Indeed, Mr. Hutto did not even have an opportunity to discuss the negative written performance evaluation he received with Mr. Yelverton until the meeting in which he was being terminated; at that meeting, he asked, "[I]s there any way we can talk about this before the termination," and Defendant's HR Manager Loomer replied that it was "a done deal." (*See* Hutto Depo, p. 238). Mr. Hutto stated that he had previously reached out directly to Ms. Loomer, requesting a meeting to discuss Mr. Yelverton's treatment of him, and Ms. Loomer said she would "get back" with him, but she took no further action in response to Mr. Hutto's request. (Hutto Depo, p. 54-57). Ms. Loomer conceded that she never spoke directly with Mr. Hutto, nor any of his subordinate employees, about his alleged performance deficiencies; instead, she merely consulted directly with Mr. Yelverton and higher level managers and provided Mr. Yelverton guidance on how to "coach" Mr. Hutto. (Loomer Depo, pp. 21-22, 75-76, 102-04). Upon receiving no help from Ms. Loomer, Mr. Hutto emailed his second-line supervisor, Mississippi Lime Operations Manager Leslie Anderson, complaining of harassment by Mr. Yelverton. (Hutto Depo, p. 58). Mr. Anderson never replied to Mr. Hutto's email. (Hutto Depo, p. 74).

## CONCLUSION

EEOC proffers the Cat's Paw Doctrine as an alternative theory of liability dependent upon the facts presented and proven at trial. Pursuant to this alternative theory, if Atlas shows that its higher level managers (Harris, Leopold, Schumacher) are the ultimate decisionmakers in this case, then EEOC posits that Defendant remains ultimately liable for Mr. Yelverton's discriminatory acts under the Cat's Paw doctrine of vicarious liability: Mr. Yelverton's age-based discriminatory animus toward Mr. Hutto was unquestionably the but-for cause of his termination.  At no point did the higher level managers conduct their own, independent investigation into Mr. Hutto's alleged performance issues.  Instead, they relied exclusively on Mr. Yelverton's assessments, resulting in a finding that Hutto's age was the but-for cause of his termination.

        Respectfully submitted,

        ROBERT A. CANINO
        Regional Attorney
        Oklahoma Bar No. 011782

        SUZANNE M. ANDERSON
        Supervisory Trial Attorney
        Texas Bar No. 14009470

        HEATHER E. NODLER
        Trial Attorney
        New York Bar No. 5455340

        /s/ *Joel Clark*
        JOEL CLARK
        Senior Trial Attorney
        Texas Bar No. 24050425

        EQUAL EMPLOYMENT OPPORTUNITY
        COMMISSION
        Dallas District Office
        207 S. Houston, Third Floor
        Dallas, Texas 75202
        (214) 253-2743
        (214) 253-2749 (FAX)

## CERTIFICATE OF SERVICE

This is to certify that on this, the 29th day of March, 2019, I electronically transmitted the attached document to the Clerk of the Court using the ECF system of filing, which will transmit a Notice of the Electronic Filing to Defendant's counsel, an ECF registrant.

        /s/ *Joel Clark*

        JOEL CLARK